COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Chaney

UNPUBLISHED

KRISTEN ANN KENT

v.      Record No. 1139-23-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
OCTOBER 29, 2024

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Tanya Bullock, Judge

(James S. Panagis, Jr.; Wolcott Rivers Gates, on briefs), for
appellant.

(Jason S. Miyares, Attorney General; S. Hallie Hovey-Murray,
Assistant Attorney General, on brief), for appellee.


Following a deferred disposition under Code § 19.2-298.02, the trial court convicted Kristen

Ann Kent for damaging the property of another with a value of more than $1,000 and stalking

another person in violation of a protective order; the court also found that she violated conditions of

her probation for five prior misdemeanor convictions. For the destruction of property and stalking

convictions, the trial court sentenced Kent to seven years of incarceration with six years and six

months suspended. The trial court revoked Kent's suspended sentences for the five prior

misdemeanor convictions and resuspended all but six months. Kent contends that the evidence was

insufficient to prove that she violated her probation or the terms of the deferred disposition order.[1]

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] In her assignments of error, Kent also asserts that the trial court erred in "convicting" her for entering Naval Air Station Oceana and for placing a 911 call. However, the record does not reflect that Kent sustained a criminal conviction based on such conduct. Because the trial court did not convict Kent of an independent crime for entering the naval base or placing a call, we have no ruling to consider as to these assignments of error.

After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

"This Court reviews the facts in the light most favorable to the Commonwealth, the prevailing party" below. *Carter v. Commonwealth*, 79 Va. App. 329, 334 (2023). "We 'regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence.'" *Id.* (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020)).

In July 2022, Kent was indicted for stalking Tyler White in violation of a protective order and causing damage of $1,000 or more to White's property. Kent also was charged with assault, violating a protective order, stalking, eluding the police, destruction of property with a value of less than $1,000, and petit larceny. Pursuant to a plea agreement, Kent pleaded guilty to all the charges.

Under the terms of the plea agreement, Kent received a deferred disposition on the two felony charges and jail sentences for the misdemeanors with all time suspended except for a six-month sentence for assault. The agreement stated, "If the defendant complies with the [terms and conditions specified], the felonies shall be dismissed upon return to Court in two (2) years. If the defendant fails to comply with any of the . . . terms, she shall be found guilty of the felonies and sentenced by the Court following argument by counsel."

At the guilty plea hearing, the stipulated evidence was that White ended his relationship with Kent after some social contact with her. Afterward, Kent harassed White by visiting his home uninvited at various times in the day and night, damaging his car and surveillance equipment at his home, spray painting graffiti on his garage and front door, and jumping into his vehicle and refusing to leave. White obtained a protective order prohibiting Kent from

contacting him. Notwithstanding the protective order, Kent tailgated White, went to his home and again damaged a surveillance camera, rammed his garage door with her car, and damaged the vehicle inside. She also eluded the police who tried to stop her as she fled from White's home.

After receiving these proffered facts, the trial court accepted the plea agreement and deferred disposition for the felony charges for two years upon the conditions stated in the plea agreement. Kent was to be of good behavior, remain on supervised probation for 2 years, pay restitution to White, and have no contact with White or be within 1,000 yards of his residence or place of employment. The trial court sentenced Kent in accordance with the plea agreement for the remaining misdemeanor charges.

On January 11, 2023, the Commonwealth petitioned the trial court to issue a *capias* for Kent's arrest due to her violation of the terms of her deferred disposition and failing to be of good behavior. The petition alleged that Kent went to White's place of employment—Naval Air Station Oceana—on January 3, 2023. She asked his coworkers for his whereabouts and handed them "civil process . . . related to the restitution" she was ordered to pay him. Kent had been "administratively separated from the Navy" on November 30, 2022, and she was "debarred from [entering] all of the Navy installations in the area." Two days later, Kent called White's commanding officer to report a criminal charge that she had brought against White. Then, on January 6, 2023, Kent called 911 and falsely reported that White was at his home, with a gun, and was suicidal. The police investigated the report and found it to be false but arrested Kent on the outstanding *capias* the trial court issued.

At the March 22, 2023 hearing, White testified that in November 2022 he learned that Kent had sued him for the restitution she had been ordered to pay him but later dropped her claim. He also learned through his naval chain of command that Kent threatened to kill him and

then herself. Kent had White charged with assault and battery in January 2023, but the court dismissed the charge with prejudice. Kent called White's workplace several times the week of January 3, 2023, asking for him and his commanding officer. At the "flight-line gate," which was located beyond the main gate of the naval base, Kent presented White's coworkers with papers for delivery to him. She also called the naval base and reported that there was a warrant for White's arrest. On January 6, 2023, in response to Kent's 911 call that White was armed and contemplating suicide, eight police officers appeared at White's residence.

Kent argued that there was no evidence she violated the terms of her probation or the deferral order. The trial court found the evidence of Kent's violations "overwhelming" and convicted her of the felony offenses. The trial court also revoked Kent's suspended sentences and resuspended all but six months. This appeal followed.

ANALYSIS

Kent argues that because the Commonwealth "cannot point to one clause of the plea agreement that [she] violated," and she sustained no new criminal convictions, the trial court erred in finding her in violation of the deferral order and conditions of her suspended sentences. This Court disagrees.

"Within the bounds prescribed by the General Assembly, trial courts have discretion to assign terms to a suspended sentence, and in the event of a violation, revoke it." *Hannah v. Commonwealth*, 303 Va. 106, 119 (2024). A trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). "A trial court's decision to revoke a suspended sentence 'will not be reversed unless there is a clear showing of abuse of discretion.'" *Hamilton v. Commonwealth*, 79 Va. App. 699, 705 (2024) (quoting *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013)). "Only when reasonable jurists could not differ can

- 4 -

we say an abuse of discretion has occurred." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

Similarly, "[t]rial courts have authority to defer disposition in criminal cases under appropriate circumstances." *Vandyke v. Commonwealth*, 71 Va. App. 723, 730 (2020). "A deferred disposition involves placing a defendant on probation under terms and conditions." *Id.* Under Code § 19.2-298.02(A), a trial court may, with the agreement of the defendant and the Commonwealth, "defer entry of a conviction order . . . and continue the case for final disposition[] on such reasonable terms and conditions as may be agreed upon by the parties and placed on the record." With a deferral under Code § 19.2-298.02(A), "[f]inal disposition may include (a) conviction of the original charge, (b) conviction of an alternative charge, or (c) dismissal of the proceedings." "Upon violation of a term or condition, the court may enter an adjudication of guilt, if not already entered, and make any final disposition of the case provided by subsection A." Code § 19.2-298.02(B).

Under the terms of her plea agreement, and as conditions of her probation for the misdemeanors and deferred disposition for the felonies, the trial court ordered Kent to have no contact with White and to remain 1,000 feet away from his residence or place of employment. Kent violated these conditions by attempting contact with White directly and instigating contact with him through others. She called the base to speak to both White and his supervisor. She visited White's workplace several times in January 2023. Kent also spoke to White's coworkers and supervisor to claim that he faced a criminal charge which, ultimately, was dismissed. Kent threatened to kill both White and herself. She also falsely reported to 911 that Kent was armed and suicidal, causing police officers to descend upon his home.

Under Code §§ 19.2-306 and -298.02, the trial court was authorized to revoke Kent's suspended sentences and enter an order of conviction because "the defendant . . . failed to abide by the conditions imposed by the court." *Nunez v. Commonwealth*, 66 Va. App. 152, 161

(2016).  This Court finds no abuse of discretion in the court finding that Kent violated the conditions of her probation and deferral order, revoking her suspended sentences, convicting her of the two felony offenses, and sentencing her for the new convictions and the probation violations.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*